# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NORTHEASTERN DIVISION

JONATHON NEUMANN, and TRUE
WEST CAMPGROUNDS AND
GLAMPING, LLC
    *Plaintiff,*

                *v.*

FENTRESS COUNTY, TENNESSEE;
MICHAEL REAGON, in his individual
capacity; and
JOHN MONTOOTH, in his individual
capacity,

    *Defendants.*

Case No.: _____


JURY DEMANDED

## COMPLAINT

Comes now the Plaintiff, JONATHON NEUMANN, by undersigned counsel, and for his Complaint would show as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this Complaint arises under the Constitution and laws of the United States.

2. Jurisdiction is further invoked under 28 U.S.C. § 1343(a)(3), as this action seeks redress for the deprivation, under color of state law, of rights secured to Mr. Neumann by the Fourth Amendment to the Constitution of the United States.

3. Mr. Neumann asserts claims for relief under 42 U.S.C. § 1983, which provides a cause of action for the deprivation, under color of state law, of rights, privileges, or immunities secured by the Constitution or laws of the United States,

and under 42 U.S.C. § 1988, which authorizes the award of reasonable attorney's fees and costs to prevailing plaintiffs in actions brought under § 1983.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), as one or more Defendants reside in this judicial district and a substantial part of the events and omissions giving rise to these claims occurred in this judicial district.

## PARTIES

5. Plaintiff Jonathon Neumann is an adult individual who, at all times relevant to this Complaint, resided in Fentress County, Tennessee.

6. Plaintiff True West Campgrounds and Glamping LLC (the "LLC") is a Tennessee limited liability company formed on May 15, 2025, with its principal office at 3341 Leatherwood Ford Road, Jamestown, Fentress County, Tennessee. At all times relevant to this Complaint, the LLC operated the campground and equine business conducted at that property and held a reasonable expectation of privacy in those premises.

7. Defendant Fentress County, Tennessee, is a political subdivision of the State of Tennessee. Fentress County is the employer of Defendant Reagon and is a "person" subject to suit under 42 U.S.C. § 1983.

8. Defendant Michael Reagon was, at all times relevant to this Complaint, the duly elected Sheriff of Fentress County, Tennessee. Defendant Reagon was the final policymaker for Fentress County with respect to law enforcement practices, including entries onto private property, applications for search and arrest warrants,

the seizure of property, and the institution of criminal proceedings within the County. He is sued in his individual capacity. At all relevant times, Defendant Reagon acted under color of state law.

9. Defendant John Montooth was, at all times relevant to this Complaint, an employee of the Tennessee Department of Agriculture serving as an Animal Health Technician, assigned to participate in livestock cruelty investigations, including the investigation at issue in this Complaint. He is sued in his individual capacity. At all relevant times, Defendant Montooth acted under color of state law.

## FACTUAL ALLEGATIONS

10. Mr. Neumann and Ms. Lyons relocated from Connecticut to Tennessee with the intent to establish and operate a combined glamping campground and equine riding business.

11. In or about May 2025, Mr. Neumann acquired and resided upon real property located at 3341 Leatherwood Ford Road in Jamestown, Fentress County, Tennessee, where he established and operated the business under the name True West Campground.

12. At all relevant times, Mr. Neumann resided at the property and exercised dominion and control over the property, its outbuildings, barns, pastures, and the curtilage thereof, and had a reasonable expectation of privacy in the property and its curtilage.

13. At all relevant times, the real property at 3341 Leatherwood Ford Road, including its outbuildings, barns, pastures, and curtilage, was used to conduct the

LLC's campground and equine business. The horses were used as operating assets of that business.

14. The equine riding component of the True West Campground business depended on a herd of approximately twenty-seven (27) horses kept and maintained at the property.

15. Although the twenty-seven horses were titled to Ms. Lyons, the horses were integral operating assets of the True West Campground equine business that Mr. Neumann established and operated at the property.

16. Mr. Neumann housed, fed, watered, maintained, and used the horses in the operation of the True West Campground equine business, and exercised day-to-day possession and control over them.

17. Mr. Neumann therefore held a possessory and business interest in the horses that was protected by the Fourth Amendment, independent of legal title.

18. The LLC had a reasonable expectation of privacy in its business premises at 3341 Leatherwood Ford Road and a possessory interest in the property located there and used in its business.

19. At all relevant times, the horses were maintained in accordance with accepted standards of care, and arrangements were made for their continued feeding and watering whenever Mr. Neumann and Ms. Lyons were away from the property.

20. As part of the relocation process, Mr. Neumann and Ms. Lyons arranged for veterinary evaluations of all twenty-seven (27) horses prior to interstate transport.

21.   On May 29, 2025, all twenty-seven (27) horses underwent veterinary inspection, and Certificates of Veterinary Inspection were issued for each of the horses for owner relocation. (Exhibit 1 — Certificates of Veterinary Inspection.)

22.   Certificates of Veterinary Inspection are issued only when the animals are deemed fit for interstate transport.

23.   Each Certificate of Veterinary Inspection included photographic depictions of the horse — left, right, and front views — reflecting the horse's condition at the time of inspection.

24.   On or about September 6, 2025, Mr. Neumann and Ms. Lyons were required to travel out of town to obtain medical care for their daughter.

25.   Before leaving, Mr. Neumann arranged for the continued care of the horses through a neighbor and friend, Shane Bluefin, who was responsible for feeding and monitoring the horses during their absence.

26.   On September 7, 2025, Mr. Bluefin sent Mr. Neumann a photograph depicting the horses eating from a bale of hay and appearing to be in good condition:



27.    On September 8, 2025, Ms. Lyons arranged for the delivery of approximately four to six (4–6) bales of hay to the property:



28. On or about September 9, 2025, at approximately 7:52 a.m., the Fentress County Sheriff's Office claims to have received a livestock welfare complaint by email concerning the horses.

29. The livestock welfare complaint described in the affidavit itself referenced "a neighbor bringing hay" to the horses, reflecting that a caretaker was tending to the animals.

30. The affidavit later prepared in connection with the criminal charges asserts that Deputy Garry Kinney visited the property and took photographs of "sickly-looking horses" on July 28, 2025.

31.     July 28, 2025 predates the alleged September 9, 2025 complaint by more than six weeks. The stated timeline in the affidavit is facially inconsistent and calls into question the reliability of the affidavit and the asserted basis for the investigation.

32.     Neither Mr. Neumann nor Ms. Lyons provided consent for any entry onto or search of the property on September 9, 2025.

33.     Neither Mr. Neumann nor Ms. Lyons had any communication with Defendant Reagon prior to the entry onto the property on September 9, 2025.

34.     On September 9, 2025, Defendant Reagon entered the property without a warrant and without valid consent. Defendant Reagon was not responding to any exigent circumstance, and no other recognized exception to the warrant requirement applied.

35.     Defendant Montooth accompanied Defendant Reagon onto the property on September 9, 2025, and personally entered the property without a warrant and without valid consent.

36.     While on the property, Defendant Reagon and Defendant Montooth conducted an inspection and evaluation of the horses, including a visual examination of each animal and a purported body condition scoring of the horses by Defendant Montooth.

37.     At the time Defendant Reagon and Defendant Montooth entered the property, Mr. Neumann's designated caretaker, Shane Bluefin, was present on the

property and was actively providing hay to the horses, and the horses had ready access to food:



38.  Tennessee Code Annotated § 39-14-211 provides that "[n]o entry onto the property of another, arrest, interference with usual and customary agricultural or veterinary practices, confiscation, or any other action authorized by this part or any other law shall be taken in response to an allegation that this part has been violated with regard to livestock unless, prior to or at the time of such action," the livestock has been examined by, among others, the commissioner of agriculture's duly authorized agent trained to conduct livestock cruelty examinations.

39.  Defendant Montooth was called to the property by Defendant Reagon and was present on the property on September 9, 2025 to perform the examination contemplated by Tenn. Code Ann. § 39-14-211.

40. Tennessee Code Annotated § 39-14-211 does not authorize warrantless entry onto private property. The statute is a procedural precondition to certain enforcement actions; it presupposes a lawful basis for the examiner's presence on the property and does not displace the Fourth Amendment's warrant requirement.

41. Defendant Montooth's purported statutory examination on September 9, 2025 was not conducted as a neutral and independent assessment. Upon information and belief, Defendant Montooth's examination was conducted in coordination with Defendant Reagon and was used to provide a façade of statutory regularity for what was, in fact, a predetermined seizure.

42. Following the warrantless entry described above, Defendant Reagon applied for and obtained a search warrant authorizing the seizure of the horses. (Exhibit 2 — Warrants and Affidavits.)

43. The application for the search warrant relied, in whole or in part, on observations and information obtained during the warrantless entry of September 9, 2025, including Defendant Montooth's body condition scoring of the horses.

44. Defendant Reagon was the affiant on the search warrant affidavit.

45. The affidavit submitted in support of the search warrant contained material misrepresentations and omissions, including the following:

   a) a statement indicating that consent to enter the property had been obtained from Amy Lyons and Jonathon Neumann, when no such consent was given;

b) a reference to investigative photographs purportedly taken on July 28, 2025, a date that predates the alleged September 9, 2025 complaint by more than six weeks;

c) conclusory assertions regarding the condition of the animals unsupported by particularized observations as to each of the twenty-seven horses;

d) the omission of the existence of a designated caretaker, Shane Bluefin, who was present on the property and actively feeding the horses at the time of the warrantless entry;

e) the omission that hay was available to the horses at the time of entry; and

f) the omission of the May 29, 2025 Certificates of Veterinary Inspection clearing all twenty-seven horses for interstate transport approximately three months before the seizure.

46. The misrepresentations and omissions in the search warrant affidavit were material. Had the affidavit accurately reflected the available facts known to Defendant Reagon and Defendant Montooth, it would not have established probable cause.

47. Defendant Reagon knew that the representations in the search warrant affidavit regarding consent and the timing of the investigative photographs were false, or made those representations with reckless disregard for the truth.

48. Defendant Montooth scored the horses by assigning two of them a body condition score of 4 and the remainder a score below 4. He did not record an individualized assessment of any horse and did not document the hoof condition, dental health, skin and coat, wounds, mobility, vital signs, parasite load, age, or veterinary or ownership history of any animal.

49. A body condition score is a single snapshot that, standing alone, does not establish neglect or cruelty. A low score can result from age, dental disease, parasites, illness, or a recent change in ownership, and a legitimate assessment requires ruling out or documenting those causes and evaluating the animals' feed, water, shelter, and overall husbandry.

50. Defendant Montooth conducted no such assessment. He documented none of these factors, disregarded the hay present and being fed to the horses at the time of his examination, and reduced his evaluation of twenty-seven animals to two conclusory scores.

51. Defendant Montooth knew that his scoring would be reported to Defendant Reagon and used to support the seizure of the horses and the prosecution of the property's owners and operators. Defendant Montooth provided his conclusory scores to Defendant Reagon for that purpose, and they were in fact used to procure the search warrant, the seizure, and the criminal charges against Mr. Neumann.

52. On September 9, 2025, Defendant Reagon and Defendant Montooth executed the search warrant and seized all twenty-seven of the horses (comprising twenty-five horses and two ponies).

53.     The seizure of all twenty-seven horses was conducted as a categorical sweep, without any individualized probable cause determination as to any particular animal.

54.     Following the seizure, the horses were transferred into the custody of Horse Haven of Tennessee, Inc., a non-party private nonprofit organization.

55.     Mr. Neumann was deprived of the possession, use, and business value of the horses as a direct result of the seizure.

56.     On or about September 22, 2025, an arrest warrant issued charging Mr. Neumann with twenty-seven (27) counts of cruelty to animals in violation of Tenn. Code Ann. § 39-14-202, supported by an affidavit of complaint. (Exhibit 2.)

57.     The affidavit of complaint was sworn by Fentress County Sheriff's Deputy Danny Miller and was prepared and procured at the direction of Defendant Reagon.

58.     The affidavit of complaint supporting Mr. Neumann's arrest relied on the same materially false and misleading factual representations and the same material omissions as the search warrant affidavit.

59.     On or about September 22, 2025, Mr. Neumann was arrested pursuant to the arrest warrant and was detained for over twenty-four (24) hours.

60.     Mr. Neumann was required to post bond, to retain criminal defense counsel, and to attend multiple court appearances in the Fentress County General Sessions Court to defend the twenty-seven counts of cruelty to animals.

61. Upon information and belief, the assistant district attorney who prosecuted the criminal proceedings against Mr. Neumann was Danielle Montooth.

62. Upon information and belief, Danielle Montooth is the sister-in-law of Defendant Montooth, whose body condition scoring and characterization of the horses supplied the asserted factual basis for the charges. The familial relationship between the examiner whose observations supported the charges and the attorney who prosecuted them deprived Mr. Neumann of a neutral and independent prosecutorial assessment of the case.

63. On October 7, 2025, all twenty-seven counts of cruelty to animals against Mr. Neumann were dismissed pursuant to an agreed order of the Fentress County General Sessions Court. (Exhibit 2.)

64. Mr. Neumann did not plead guilty to, and was not convicted of, any offense, and the agreed order did not require any admission of wrongdoing by Mr. Neumann.

65. The criminal proceedings against Mr. Neumann terminated in his favor.

66. As a direct and proximate result of the seizure of the horses, Mr. Neumann was unable to continue developing or operating the True West Campground equine and glamping business.

67. Without the horses, the property was no longer viable for its intended use, and Mr. Neumann was forced to sell the property.

68. The seizure and resulting prosecution generated significant negative attention within the community and surrounding area, adversely affecting the

14

marketability and perceived value of the property. As a result, Mr. Neumann was compelled to sell the property for less than its fair market value.

69.     Mr. Neumann has suffered, and continues to suffer, economic losses, emotional distress, humiliation, reputational harm, and other consequential harms as a direct and proximate result of Defendants' conduct.

**COUNT 1: 42 U.S.C. § 1983 – UNREASONABLE SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT**
**(All Plaintiffs, All Defendants)**

70.     The Fourth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, protects individuals from unreasonable searches of their property and curtilage and from unreasonable seizures of their property, including personal property and business assets.

71.     Mr. Neumann and True West Campgrounds and Glamping, LLC had a reasonable expectation of privacy in the property and its curtilage, including the areas in which the horses were kept, by virtue of his residence at and control over the property and his operation of the True West Campground business there.

72.     Mr. Neumann held a possessory and business interest in the horses as the operating assets of the True West Campground equine business, an interest protected by the Fourth Amendment independent of legal title to the animals.

73.     On September 9, 2025, Defendant Reagon entered the property and its curtilage without a warrant, without valid consent, and without any exigent circumstance or other recognized exception to the warrant requirement, and conducted an unlawful search by inspecting and evaluating the horses and the conditions on the property.

74. On September 9, 2025, Defendant Montooth entered the property and its curtilage without a warrant, without valid consent, and without any exigent circumstance or other recognized exception to the warrant requirement, and conducted an unlawful search by inspecting the horses and performing a purported body condition scoring of each animal.

75. Defendant Reagon procured the search warrant through an affidavit that contained material misrepresentations and omissions, as set forth above; had the affidavit accurately disclosed the facts known to Defendant Reagon and Defendant Montooth, it would not have established probable cause.

76. Defendant Reagon committed the foregoing acts as the duly elected Sheriff of Fentress County and the County's final policymaker for the conduct at issue.

77. The search warrant was tainted by the prior unconstitutional warrantless entry and search and lacked an independent lawful basis.

78. Defendant Montooth materially participated in procuring the warrant and the resulting seizure by supplying the body condition scoring and characterizations of the horses that he knew or should have known were inaccurate or incomplete, conducted in a manner designed to support a predetermined seizure rather than to provide a neutral and independent assessment.

79. The seizure of all twenty-seven horses was not supported by individualized probable cause as to any animal, constituted an unreasonable seizure

under the Fourth Amendment, and meaningfully interfered with Mr. Neumann's possessory and business interest in the horses.

80. Defendant Reagon acted under color of state law by using and abusing the authority and power of his office as the duly elected Sheriff of Fentress County to enter and search the property, to procure the constitutionally defective warrant, and to execute the unlawful seizure, thereby violating Mr. Neumann's rights.

81. Defendant Montooth acted under color of state law by using and abusing the authority and power of his position as an Animal Health Technician with the Tennessee Department of Agriculture to enter and search the property and to supply the observations and characterizations supporting the constitutionally defective warrant and seizure, thereby violating Mr. Neumann's rights.

82. Defendant Reagon and Defendant Montooth each had the opportunity and the means to prevent the other's unlawful warrantless entry and search of the property, were aware of the absence of a warrant, consent, or exigent circumstance, and failed to intervene.

83. The conduct of Defendant Reagon and Defendant Montooth was intentional, reckless, and objectively unreasonable in light of clearly established law prohibiting warrantless entry onto private property and curtilage absent consent or exigent circumstances, prohibiting reliance on materially false or misleading affidavits to procure warrants, and prohibiting the seizure of property without probable cause.

84.     As a direct and proximate result of the unlawful search and seizure, Mr. Neumann suffered the harms set forth herein.

85.     Mr. Neumann and True West Campgrounds and Glamping, LLC are entitled to compensatory damages, punitive damages against Defendant Reagon and Defendant Montooth in their individual capacities, nominal damages, and attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### COUNT 2: 42 U.S.C. § 1983 – UNLAWFUL ARREST IN VIOLATION OF THE FOURTH AMENDMENT
### (Plaintiff Neumann, All Defendants)

86.     The Fourth Amendment protects against unreasonable seizures of the person, including arrests not supported by probable cause.

87.     On or about September 22, 2025, Mr. Neumann was arrested for twenty-seven counts of cruelty to animals in violation of Tenn. Code Ann. § 39-14-202, pursuant to an arrest warrant procured by Defendant Reagon, or by his subordinates acting under his direction, and supported by an affidavit of complaint.

88.     The affidavit of complaint supporting Mr. Neumann's arrest warrant relied upon the same materially false and misleading representations, and reflected the same material omissions, as the search warrant affidavit, and without those false statements and omissions did not establish probable cause to arrest Mr. Neumann for any offense.

89.     Defendant Montooth's body condition scoring and characterization of the horses formed a material part of the showing of probable cause relied upon for Mr. Neumann's arrest.

90. Defendant Reagon, as the duly elected Sheriff of Fentress County and the final policymaker for the Fentress County Sheriff's Office with respect to arrests for alleged livestock cruelty, directed, authorized, and ratified the arrest of Mr. Neumann on the basis of the materially deficient affidavit of complaint.

91. Mr. Neumann's arrest was effected without probable cause and constituted an unreasonable seizure of his person in violation of the Fourth Amendment.

92. Defendant Reagon acted under color of state law by using and abusing the authority of his office as Sheriff of Fentress County to procure the arrest warrant and effect Mr. Neumann's arrest without probable cause.

93. Defendant Reagon committed the foregoing acts as the duly elected Sheriff of Fentress County and the County's final policymaker for the conduct at issue. His acts therefore constituted the official policy of Fentress County and were the moving force behind the violation of Plaintiff Neumann's Fourth Amendment rights, rendering Fentress County liable under 42 U.S.C. § 1983.

94. Defendant Montooth acted under color of state law by using and abusing the authority of his position as an Animal Health Technician with the Tennessee Department of Agriculture to supply the material observations and characterizations supporting the arrest warrant affidavit.

95. The conduct of Defendant Reagon and Defendant Montooth was intentional, reckless, and objectively unreasonable in light of clearly established law

prohibiting arrests without probable cause and prohibiting reliance on materially false or misleading affidavits to procure arrest warrants.

96. As a direct and proximate result of his unlawful arrest, Mr. Neumann suffered humiliation, reputational harm, emotional distress, financial losses, and the other harms set forth herein.

97. Mr. Neumann is entitled to compensatory damages, punitive damages against Defendant Reagon and Defendant Montooth in their individual capacities, nominal damages, and attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT 3: 42 U.S.C. § 1983 – MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT
### (Plaintiff Neumann, All Defendants)

98. On or about September 22, 2025, Defendant Reagon, personally or through his subordinates acting under his direction, caused the institution of twenty-seven counts of cruelty to animals against Mr. Neumann in the General Sessions Court of Fentress County, Tennessee.

99. Defendant Montooth materially participated in the institution of the criminal proceedings against Mr. Neumann by providing the body condition scoring and other observations that formed the asserted factual basis for the charges.

100. The institution of the criminal proceedings was a deprivation of liberty consequent upon legal process. Mr. Neumann was arrested and detained for over twenty-four hours, required to post bond, required to retain criminal defense counsel, and required to attend multiple court appearances.

101. The criminal proceedings against Mr. Neumann were instituted without probable cause. The materially false statements and omissions in the affidavit of

complaint were essential to any finding of probable cause; without those false statements and omissions, the affidavit did not support probable cause as to any of the twenty-seven counts.

102. Defendant Reagon's misrepresentations and omissions in the affidavit of complaint were made knowingly, or with reckless disregard for the truth, and with malice.

103. Defendant Montooth's contributions to the criminal proceedings, including his body condition scoring and characterizations of the horses, were provided knowingly, or with reckless disregard for the truth, and with malice.

104. On October 7, 2025, all twenty-seven charges against Mr. Neumann were dismissed pursuant to an agreed order. Mr. Neumann did not plead guilty to, and was not convicted of, any offense, the dismissal required no admission of wrongdoing, and the criminal proceedings terminated in Mr. Neumann's favor.

105. Defendant Reagon acted under color of state law by using and abusing the authority of his office as Sheriff of Fentress County to initiate and pursue the criminal proceedings against Mr. Neumann without probable cause.

106. Defendant Reagon committed the foregoing acts as the duly elected Sheriff of Fentress County and the County's final policymaker for the conduct at issue. His acts therefore constituted the official policy of Fentress County and were the moving force behind the violation of Plaintiffs' Fourth Amendment rights, rendering Fentress County liable under 42 U.S.C. § 1983.

107. Defendant Montooth acted under color of state law by using and abusing the authority of his position as an Animal Health Technician with the Tennessee Department of Agriculture to provide the material support for the criminal proceedings against Mr. Neumann.

108. As a direct and proximate result of the malicious prosecution, Mr. Neumann suffered humiliation, reputational harm, emotional distress, financial losses, and the other harms set forth herein.

109. Mr. Neumann is entitled to compensatory damages, punitive damages against Defendant Reagon and Defendant Montooth in their individual capacities, nominal damages, and attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## DAMAGES

110. As a direct and proximate result of the Defendants' wrongful conduct described herein, Mr. Neumann has suffered, and continues to suffer, the following damages:

a) economic damages arising from the loss of the use and possession of the twenty-seven horses that were the operating assets of the True West Campground equine business;

b) the loss of use, possession, and business value of the horses;

c) lost income, lost business opportunities, and loss of future earning capacity associated with the True West Campground equine and glamping business;

d) the diminution in value, and impaired sales price, of the real property at 3341 Leatherwood Ford Road, Jamestown, Tennessee;

e) financial losses related to the maintenance, transportation, and care of the horses;

f) reputational harm and loss of standing in the community;

g) humiliation, embarrassment, emotional distress, and mental anguish; and

h) litigation expenses, including reasonable attorney's fees, costs, and other expenses recoverable pursuant to 42 U.S.C. § 1988.

111. Mr. Neumann seeks punitive damages against Defendant Reagon and Defendant Montooth in their individual capacities under 42 U.S.C. § 1983. Their conduct was undertaken intentionally, maliciously, willfully, or with reckless or callous disregard of Mr. Neumann's federally protected rights, justifying the imposition of punitive damages. Punitive damages are not sought against Fentress County.

112. As a direct and proximate result of Defendants' unlawful search of the LLC's premises and seizure of property used in the LLC's business, the LLC suffered the destruction of its campground and equine business, lost income and business opportunities, and loss of future earning capacity.

## REQUEST FOR RELIEF

Based upon all of the foregoing, Plaintiff JONATHON NEUMANN requests:

I. That the Defendants be required to answer this Complaint within the time provided by law;

II. That this case be tried by a jury on all issues so triable;

III.   That judgment enter for the Plaintiffs and against each Defendant on each Count of this Complaint, as applicable;

IV.   That Mr. Neumann be awarded nominal damages against each Defendant for the violation of his Fourth Amendment rights;

V.   That Mr. Neumann be awarded compensatory damages against each Defendant in an amount to be determined by the jury;

VI.   That Mr. Neumann be awarded punitive damages against Defendant Reagon and Defendant Montooth in their individual capacities only, in an amount to be determined by the jury, and that no punitive damages be sought or awarded against Fentress County;

VII.   That Mr. Neumann be awarded his reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d);

VIII.   That Mr. Neumann be awarded pre-judgment and post-judgment interest against the Defendants to the maximum extent permitted by law; and

IX.   That Mr. Neumann be granted such other, further, and general relief as the Court deems just and appropriate.

Respectfully submitted,

**BRAZIL CLARK, PLLC**

Wesley Ben Clark, BPR #32611
Paul D. Randolph III, BPR #39667
760 E. Argyle Avenue
Nashville, Tennessee 37203
(615) 730-8619
wesley@brazilclark.com
paul@brazilclark.com

*Counsel for Plaintiffs*

Case 2:26-cv-00035     Document 1     Filed 06/03/26     Page 25 of 25 PageID #: 25